IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

MARK T. THOMSON,

                    Petitioner,

          vs.

HAROLD GRAHAM,[1] Superintendent,
Auburn Correctional Facility,

                    Respondent.

No. 9:08-cv-01269-JKS

MEMORANDUM DECISION

          Mark T. Thomson, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus

Relief Under 28 U.S.C. § 2254.  Thomson is currently in the custody of the New York State

Department of Correctional Services, incarcerated at the Auburn Correctional Facility.

Respondent has answered, and Thomson has replied

## I.  BACKGROUND/PRIOR PROCEEDINGS

          Thomson was initially convicted in the Albany County Court on a guilty plea of one

count of Attempted Murder in the Second Degree and sentenced to an indeterminate prison term

of 12½ years to life.  That conviction was reversed on appeal.  On remand, in November 2002,

Thomson was convicted in the Albany County Court in a non-jury trial of one count of

Attempted Murder in the First Degree (N.Y. Penal Law §§ 110.00/125.27[1](a)(i)), four counts

of Attempted Assault in the First Degree (N.Y. Penal Law §§ 110.00/120.10[1]), and one count

of Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25).  The trial court

---

[1] Harold Graham, Superintendent, Auburn Correctional Facility, is substituted for Luis R.
Marshall, Superintendent, Sing Sing Correctional Facility.  Fed. R. Civ. Proc. 25(d).

sentenced Thomson to an indeterminate prison term of 16 years to life on the attempted murder

count, indeterminate prison terms of 5 to 10 years on each of the 4 attempted assault counts, and

an indeterminate prison term of 2 to 6 years on the reckless endangerment count.  All sentences

to run concurrently.  The trial court also imposed 5 years of postrelease supervision.  Thomson

timely appealed his conviction and sentence to the Appellate Division, Third Department.  The

Appellate Division affirmed his conviction and sentence, and the New York Court of Appeals

denied leave to appeal on March 31, 2005.[2]

On November 25, 2005, Thomson filed a motion to vacate his conviction under N.Y.

Criminal Procedure Law § 440.10 ("CPL § 440.10 motion") in the Albany County Court, which

denied the motion in an unpublished, reasoned decision.  The Appellate Division, Third

Department, affirmed the denial of Thomson's CPL § 440.10 motion, and the New York Court of

Appeals denied leave to appeal on January 31, 2008.[3]  On June 17, 2008, Thomson filed a second

CPL 440.10 motion in the Albany County Court, which denied the motion on procedural grounds

in an unreported, reasoned decision, and the Appellate Division, Third Department, denied leave

to appeal on October 21, 2008.  Thomson timely filed his Petition for relief in this Court on

October 31, 2008.

The facts underlying Thomson's conviction are well known to the parties and are not

directly relevant to the issues raised by Thomson in his Petition.  Consequently, in the interest of

brevity, they are not repeated here.

_____

[2] *People v. Thomson*, 786 N.Y.S.2d 262 (N.Y.A.D. 2004), *lv. denied*, 829 N.E.2d 684
(N.Y. 2005) (Table) (*Thomson I*).

[3] *People v. Thomson*, 847 N.Y.S.2d 682 (N.Y.A.D. 2007), *lv. denied*, 881 N.E.2d 1212
(N.Y. 2008) (Table) (*Thomson II*).

## II.  GROUNDS RAISED/DEFENSES

In his Petition Thomson contends that he was denied the effective assistance of trial counsel on two grounds:  (1) failure to adequately research and ascertain whether Thomson's prior New Jersey conviction constituted a prior felony conviction under New York law; and (2) failure to inform Thomson of his maximum sentencing exposure prior to Thomson's rejection of a proffered plea agreement.  Respondent contends that Thomson's second ground is procedurally barred.  Respondent raises no other affirmative defense.[4]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be objectively unreasonable, not just incorrect or erroneous.[9]  The Supreme Court has made it

clear that the objectively unreasonable standard is a substantially higher threshold than simply

believing that the state court determination was incorrect.[10]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state-court criminal proceeding is whether the error had a

substantial and injurious effect or influence in determining the outcome.[12]  Petitioner "bears the

burden of proving by a preponderance of the evidence that his constitutional rights have been

violated."[13]

---

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[12] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and
(continued...)

In applying this standard, this Court reviews the last reasoned decision by the state court.[14]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15]  Although pre-AEDPA precedent established that deference is due findings of state appellate courts,[16] the Second Circuit has left the question open with respect to AEDPA cases.[17]  In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are presumed to be correct.

IV.  DISCUSSION

A.      **Procedural Bar**

Thomson raised the issue of ineffective assistance of counsel based upon the failure of trial counsel to properly inform Thomson of his maximum sentencing exposure prior to Thomson's rejection of a proffered plea agreement in his second CPL § 440.10 motion.  The Albany County Court denied his motion on procedural grounds, holding:

> The ground for [Thomson's] first CPL §440.10 motion was ineffective assistance of counsel, just as it is on this motion.  The ground has not changed, [Thomson] merely raises related but distinct issues within the overall ineffective assistance of counsel ground.  The record is clear, however, that each of these

---

[13](...continued)
citation omitted).

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[17] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

newly argued issues could have been raised in [Thomson's] first CPL §440.10 motion.  No issue of fact is presented by [Thomson's] motion that requires a hearing, and [Thomson] has raised no compelling reason for the court to exercise its interest of justice jurisdiction in this case.

Accordingly, the Court denies [Thomson's] motion pursuant to CPL §440.10(3)(c).[18]

Respondent contends that Thomson is procedurally barred on adequate and independent state law grounds from asserting this ineffective assistance of counsel claim in a federal habeas proceeding.  Thomson counters that N.Y. Criminal Procedural Law § 440.10[3](c) is not uniformly and consistently applied; therefore, it is not an adequate and independent state law ground.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[19]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[20]  Contrary to Thomson's argument, N. Y. Criminal Procedure Law § 440.10[3](c), a default procedural rule established by statute, is an independent and adequate state ground precluding review by this Court.[21]  Thus, Thomson's second ground of his ineffective assistance of trial counsel claim is procedurally barred.[22]

---

[18] Docket No. 13-19, p. 4.

[19] *Coleman,* 501 U.S. at 729.

[20] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[21] *Murden v. Artuz*, 497 F.3d 178, 193 (2d Cir. 2007), *cert. denied sub nom., Murden v. Ercole*, 128 S. Ct. 1083 (2008) (Mem.).

[22] Thomson initially pled guilty to a reduced charge of Attempted Murder in the *Second* Degree, and was sentenced to an indeterminate prison term of 12½ years to life.  It strains

(continued...)

**B.      Prior Conviction as a Predicate Felony**

Thomson raised this ground in his first CPL § 440.10 motion.  As described by the

Appellate Division in *Thomson II*, Thomson contends:

> Here, [Thomson] contends that he was prejudiced by counsel's failure to
> ascertain that a prior New Jersey conviction did not constitute a predicate felony,
> because both the People and defense counsel considered him a second felony
> offender during plea negotiations.  By affidavit, counsel admitted that [Thomson]
> asserted that he was not a predicate felon, counsel made only a cursory check to
> confirm this prior to plea negotiations and he only confirmed [Thomson's]
> assertion after trial.[23]

The Appellate Division first determined that "[c]ounsel's failure to verify [Thomson's]

criminal history prior to plea negotiations constituted inadequate legal assistance."[24]  The

Appellate Division, addressing the prejudicial effect of  trial counsel's inadequate assistance,

rejected Thomson's arguments, holding:

> Acknowledging counsel's error, we must also determine whether there is a
> reasonable probability that, but for this error, the result would have been different
> (*see Mask v. McGinnis,* 233 F.3d at 140; *People v. Williams,* 299 A.D.2d at 580,
> 748 N.Y.S.2d 879).  To establish such prejudice, [Thomson] must show that the
> People would have offered a plea deal more favorable than their offer of an
> aggregate prison term of 8 to 16 years if they had been aware of his actual status
> and, if such a deal were offered, [Thomson] would have pleaded guilty (*see
> People v. Garcia,* 19 A.D.3d at 20-21, 795 N.Y.S.2d 216).  [Thomson] does not
> present any evidence that the People would have offered a more favorable plea
> had his true status been known, instead merely relying on the assumption that first
> time violent offenders will always receive more favorable plea offers than
> predicate offenders.  As there is no evidence that the People based their plea offer

---

[22](...continued)
credulity beyond the breaking point to assume that Thomson was not aware that it was more
likely than not he would be sentenced to an equal, if not longer, prison term if convicted of
Attempted Murder in the *First* Degree.  Thus, even if this Court were to reach the merits,
Thomson would not prevail.

[23] *Thomson II*, 847 N.Y.S.2d at 684.

[24] *Id.*

7

on the belief that [Thomson] was a predicate offender (*compare id.* at 21, 795 N.Y.S.2d 216; *Mask v. McGinnis,* 233 F.3d at 141), we are unpersuaded that a change in his status would have led to a more favorable plea offer, especially considering the serious nature of the charges here.  Significantly, in *Garcia* and *Mask,* the People were offering the lowest sentences available based upon the defendants' incorrect prior criminal records, and indicated a willingness to negotiate lower sentences if possible.  Here, the People were offering midrange sentences on two counts of the indictment, with no record indication of a willingness to negotiate further within the permissible sentencing range.

[Thomson] also failed to present objective evidence that, if given the opportunity, he would have accepted a more favorable plea offer (*see United States v. Gordon,* 156 F.3d 376, 381 [1998]).  [Thomson] relies solely upon his own self-serving affidavit in which he states that had a more favorable offer been extended, he "would have considered [it]."  While there is no record evidence as to what sentence [Thomson] would have been willing to accept, based on the charges he faced it is unlikely that there would have been a significant disparity between an offer made with knowledge that [Thomson] was a first-time felon and the 8 to 16-year term that he was offered (*cf. Mask v. McGinnis,* 233 F.3d at 142).  As [Thomson] rejected an offer of 8 to 16 years in prison and was willing to go to trial facing a term with a maximum of life imprisonment, and he failed to provide a definitive statement as to what sentence he would have accepted, we are not convinced that [Thomson] would have accepted a more favorable offer had it been made.  Thus, we cannot find that counsel's misconception during plea negotiations caused [Thomson] any prejudice.[25]

Under *Strickland,* to demonstrate ineffective assistance of counsel, Thomson must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[26]  Thomson must show not only that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, but that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[27]  In this case, the Appellate Division found that Thomson had met the first prong of the *Strickland-Hill*

---

[25] *Id.* at 684-85.

[26] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[27] *Woodford v. Visciotti*, 537 U.S. 19, 22–23 (2002);  *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

test.  Thus, the only issue before this Court is whether the Appellate Division correctly found that

Thomson had failed to satisfy the second prong—prejudice.

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold." *Schriro,*
> *supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general
> standard, a state court has even more latitude to reasonably determine that a
> defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S.
> 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule
> application was unreasonable requires considering the rule's specificity.  The more
> general the rule, the more leeway courts have in reaching outcomes in case-by-
> case determinations").[28]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims

under the § 2254(d)(1) standard.[29]

The Supreme Court, applying the "doubly deferential standard," has made clear that when

adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the

situation on direct review, focus is not on whether counsel's performance fell below the

*Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel

was not ineffective constituted an "*unreasonable* application of federal law[,][which] is different

from an *incorrect* application of federal law."[30]

> Under § 2254(d), a habeas court must determine what arguments or theories
> supported or, as here, could have supported, the state court's decision; and then it
> must ask whether it is possible fairminded jurists could disagree that those

---

[28] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[29] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[30] *Harrington v. Richter*, 562 U.S. ---, 131 S. Ct. 770, 785 (2011) (emphasis in the
original).

arguments or theories are inconsistent with the holding in a prior decision of this Court.[31]

The Supreme Court has identified three circumstances under which prejudice is presumed.  First, the complete denial of counsel at any critical stage of a criminal proceeding.  Second, where defense counsel fails to subject the prosecution's case to any meaningful adversarial testing.  Third, in those situations in which counsel is called upon to render assistance under circumstances where competent counsel very likely could not.[32]  The facts of this case do not bring into play any of these *per se* circumstances.

In this case, Thomson runs up against two bedrock principles of federal habeas corpus jurisprudence.  First, Thomson bears the burden of establishing by the preponderance of the evidence that his constitutional rights have been violated.[33]  Second, Thomson must overcome the presumption that the state court's findings of fact are correct by clear and convincing evidence.[34]  Thomson has failed to shoulder either burden.  Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance* and *Richter*, can this Court find that the state court unreasonably

---

[31] *Id.* at 786.

[32] *Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (discussing *United States v. Cronic*, 466 U.S. 468 (1984)).

[33] *Hawkins*, 460 F.3d at 246.

[34] 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

[35] 28 U.S.C. § 2254(d).

applied the correct legal principle to the facts of Thomson's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Thomson has failed to establish that his defense was prejudiced, as required by *Strickland-Hill*. Thomson is not entitled to relief under his first ground

## V.  CONCLUSION AND ORDER

Thomson is not entitled to relief on either ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[36]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[37]

The Clerk of the Court is to enter judgment accordingly.

Dated:  February 17, 2011.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[36] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[37] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.